IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AUDREY M. McCONKEY, | ) CASE NO. 1:10 CV 503 |
| | ) |
| Plaintiff, | ) JUDGE SARA LIOI |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Audrey M. McConkey, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that McConkey had severe impairments consisting of Multiple Sclerosis (MS), back disorder, and right upper extremity myofascial pain.[1] The ALJ made the following finding regarding McConkey's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant must be allowed a sit/stand option, can perform only occasional postural activities, and work that involves no excessive environmental conditions such as exposure to dust, fumes, odors, gases, temperature extremes, wide humidity

---

[1] Transcript ("Tr.") at 18.

changes. Additionally, claimant cannot work at heights or around hazardous equipment and machinery.[2]

McConkey has no past relevant work.[3] Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that McConkey could perform. The ALJ, therefore, found McConkey not under a disability.[4]

McConkey asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, McConkey asserts three arguments:

- that the ALJ failed to properly evaluate the opinions of McConkey's treating physicians – Mary Rensel, M.D. and James Lambros, D.O. – and articulate reasons why they should not be controlling;

- that the ALJ's finding that McConkey was not totally credible is not supported by substantial evidence; and

- that substantial evidence does not support the residual functional capacity finding because such finding did not address McConkey's literacy limitations.[5]

---

[2] *Id.* at 20.

[3] *Id.* at 23.

[4] *Id.* at 24.

[5] ECF # 21 at 3.

As will be detailed below, I recommend that certain findings of the ALJ lack the support of substantial evidence and that this case should be remanded for reconsideration of those findings.

**Analysis**

**A.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[7] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**B.     The ALJ did not follow the treating physician rule as to the opinions of Drs. Rensel and Lambros.**

As noted, the ALJ had before him opinions from two treating physicians – Mary Rensel, M.D., a neurologist from the Cleveland Clinic, and James Lambros, D.O., McConkey's primary care physician.

As to Dr. Rensel, in an evaluation done in June, 2008, she confirmed McConkey's diagnosis of multiple sclerosis and addressed the severity of the physical consequences of the disease on McConkey.[9] However, in that discussion, Dr. Rensel did not give an opinion as to any work-related limitations imposed by these physical consequences because of the absence of necessary testing.[10] In later progress notes done in July, 2009, Dr. Rensel commented that McConkey was tolerating Rebif – an intramuscular injection for treating MS

---

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[9] Tr. at 307-10.

[10] *Id.*

– better than Avonex – also an MS injectable – and that her pain was stable.[11]  But, in a questionnaire concerning pain completed in 2009, Dr. Rensel did note that McConkey could not perform her prior job as a dishwasher due to weakness in her hands caused by her MS.[12]

Regarding Dr. Lambros, the record before the ALJ shows that he did a functional capacity evaluation in February, 2008.[13] Although in that evaluation Dr. Lambros did express his personal opinion that McConkey was totally unemployable, more importantly, he also discussed specific exertional, postural, and mental limitations disclosed by the evaluation.[14]

On that record, the ALJ did discuss in his decision the course of treatment employed by Drs. Rensel and Lambros.[15]  He did not, however, specifically discuss the opinions of either treating physician, noted above, nor did he indicate what weight, if any, he assigned to the reports of these physicians.[16] The only medical report that was specifically given some weight was that of Dr. Manos, a state agency physician who reviewed McConkey's medical records. In that instance, the ALJ assigned "some weight" to the report of Dr. Manos.[17]

---

[11] *Id*. at 312.

[12] *Id*. at 329.

[13] *Id.* at 377-78.

[14] *Id*. at 378.

[15] *Id*. at 21-22.

[16] *Id*.

[17] *Id*. at 22.

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[18] set out standards for how ALJ's should employ the treating physician rule.  In *Blakley*, the ALJ failed to mention the opinion of one treating physician altogether;[19] discounted the opinion of another as inconsistent with other evidence of record;[20] and failed to disclose whether the opinion of a third was weighed as a treating physician.[21]  On these facts showing non-compliance by the ALJ with the rule as to treating physicians, *Blakley* expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[22]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[23]

The Commissioner here concedes that the ALJ failed to discuss the opinions of the treating physicians in any meaningful detail, and failed to indicate whether those opinions were given controlling weight or even to discuss what weight he gave to the opinions and why he did so.[24]  Instead, like the Commissioner in *Blakley*, the Commissioner here asks the

---

[18] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009).

[19] *Id*. at 407-08.

[20] *Id*. at 408.

[21] *Id*.

[22] *Id*. at 409-10.

[23] *Id*. at 410.

[24] ECF # 17 at 7-10.

Court to excuse any error as harmless because the ALJ's finding was supported by the record as a whole,[25] and the reasoning behind the decision was clear.[26]

Because I recommend finding that *Blakley* does not permit the acknowledged error here to be deemed harmless, I recommend that the matter be remanded.

**C.     Substantial evidence does not support the residual functional capacity finding because the ALJ did not include a discussion of McConkey's reading limitations.**

The ALJ's decision here does not address McConkey's documented difficulties with reading. Although the record indicates that McConkey graduated from high school, the records also disclose that she did so with a significantly limited ability to read. According to the Individual Education Plan adopted from McConkey in 1999, her academic abilities then were only between the first and third grade levels.[27] The plan adopted a year earlier stated that she had a severe inability to read and write, with such skills at the first grade level.[28] Because of these documented deficiencies, McConkey was tested orally and written texts were read to her.[29]

With this background, McConkey's counsel cross-examined the vocational expert as to the reading ability required to perform the three jobs identified by the expert in response

---

[25] *Id*. at 8.

[26] *Id*. at 10.

[27] Tr. at 117.

[28] *Id*. at 121-22.

[29] *Id*. at 118.

to the hypothetical posed by the ALJ.[30] Whether these specific jobs could be satisfactorily performed by someone with McConkey's documented level of literacy is unclear from the record. In addition to the absence of such an evidentiary base, the ALJ did not consider McConkey's literary limitations issue in his decision. Thus, I recommend, should my earlier the recommendation for a remand be adopted, that on remand the ALJ should specifically consider and discuss the effect, if any, of McConkey's reading difficulties on the residual functional capacity finding.

## Conclusion

For the reasons stated, I recommend that the decision of the Commissioner denying McConkey disability insurance benefits and supplemental security income be remanded for further proceedings consistent with this recommendation.

Dated: August 9, 2011                    s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[31]

---

[30] *Id*. at 407-09.

[31] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).